Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone:      (615) 726-5422
Facsimile:      (615) 726-5417
rbusch@kingballow.com

Elliot Schnapp (ES 9170)
GORDON, GORDON & SCHNAPP, P.C.
30 Broad Street 21st Floor
New York, New York 10004
Telephone:      (212) 355-3200
Facsimile:      (212) 355-3292

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GOLDEN CROWN PUBLISHING, LLC** | |
| **Plaintiff,** | |
| **v.** | **Case No.** |
| **SONY MUSIC ENTERTAINMENT d/b/a COLUMBIA RECORDS; JONATHAN H. SMITH p/k/a LIL JON; LIL' JON TOURING, INC.; LIL' JON PRODUCTIONS, INC.; LIL JON MERCHANDISING INC; LIL' JON 00017, INC.; WILLIAM SAMI ETIENNE GRIGAHCINE p/k/a DJ SNAKE; DJ SNAKE MUSIC, LLC; DJ SNAKE TOURING, LLC; MARTIN JOSEPH LEONARD BRESSO p/k/a TCHAMI; STEVE GUESS; COOKIES AND MILK, LLC d/b/a KING OF CRUNK MUSIC; KOBALT MUSIC PUBLISHING AMERICA, INC. d/b/a SONGS OF KOBALT MUSIC PUBLISHING; BMG RIGHTS MANAGEMENT (US) LLC d/b/a BMG GOLD SONGS; GET FAMILIAR INC. d/b/a GET FAMILIAR MUSIC.** | **COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |
| **Defendants.** | |

## COMPLAINT

1.      This is an action for willful copyright infringement in which Plaintiff Golden Crown Publishing, LLC ("Golden Crown" or "Plaintiff"), by and through its undersigned counsel, brings its Complaint against Jonathan H. Smith p/k/a Lil Jon ("Lil Jon"), William Grigahcine p/k/a DJ Snake ("DJ Snake"), Martin Joseph Leonard Bresso, and Steve Guess (collectively the "Writer Defendants"), and Sony Music Entertainment d/b/a Columbia Records, Lil' Jon Touring, Inc., Lil' Jon Productions, Inc., Lil Jon Merchandising Inc, Lil' Jon 00017, Inc., DJ Snake Music, LLC, DJ Snake Touring, LLC, Cookies and Milk, LLC d/b/a King of Crunk Music, Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music Publishing, BMG Rights Management (US) LLC d/b/a BMG Gold Songs, and Get Familiar Inc. d/b/a Get Familiar Music (collectively, and inclusive of the Writer Defendants, "Defendants"). Plaintiff's claims involve intentional infringement of a copyright to Plaintiff's original work titled "Turn Down for What" (the "Infringed Work" or the "Original Work"), and has resulted in the Defendants reaping a fortune as a result.

2.      The Writer Defendants are the credited writers of the international hit "Turn Down For What" (hereinafter, the "Infringing Composition," or the "Infringing Sound Recording," or collectively the "Infringing Works"), who copied, without authorization, or credit, the work of other active, professional songwriters and musicians, unabashedly taking credit for the work of these songwriters and musicians by claiming it to be theirs.  The copying alleged herein directly misappropriates quantitatively and qualitatively important portions of Plaintiff's Original Work in a manner that is easily recognizable to the ordinary observer.  While Defendants received accolades, awards, and a fortune for the Infringing Works, and built a brand on a foundation of copyright infringement, the writers truly responsible for the success of the

Infringing Works received nothing, and their publisher, which owns the copyright, is now forced to bring this action to vindicate their rights for the taking of their work.  Plaintiff in this action, by and through its undersigned counsel, alleges upon knowledge and belief as follows:

## THE PARTIES

3.      Plaintiff Golden Crown Publishing, LLC ("Golden Crown" or "Plaintiff") is a New Jersey Limited Liability Company that operates as a publishing company and does business in New Jersey. Plaintiff Golden Crown is the legal and beneficial owner of the Infringed Work as recorded by the recording artist Freddie GZ, produced by Tha Architectz, and released by the record label Addicted 2 Money Multi Media, LLC d/b/a A2M Multimedia ("A2M"). Golden Crown is the owner of the duly registered copyright in the Infringed Work.

4.      Defendant Sony Music Entertainment d/b/a Columbia Records ("Sony") is a Delaware General Partnership with its principal place of business at 550 Madison Avenue, New York, NY 10022. Upon information and belief, Sony Music released, manufactured, distributed and is the legal owner of the Infringing Sound Recording of the Infringing Works, and subsequent remixes thereof.  Upon further information and belief, Sony may be served via its registered agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808. Sony operates as a record label that regularly conducts business within this Judicial District, where it may be found, including business specifically related to the exploitation of the Infringing Works in this Judicial District and throughout the United States. Upon information and belief, Sony, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

5.      Upon information and belief, Defendant Jonathan H. Smith, professionally known as Lil Jon ("Lil Jon"), is a resident and citizen of Georgia and regularly conducts business in this Judicial District with respect to the Infringing Works. Lil Jon, an individual, is a writer, composer and performer of the Infringing Works.  Lil Jon is a registered writer with BMI in New York, a New York Corporation with its headquarters in New York.  Through that affiliation, BMI thus controls 50% of the public performance rights of the Infringing Composition, and accounts to Lil Jon for public performances of it. Upon information and belief, Lil Jon, individually and through his agents, conducted a nationwide advertising campaign for touring in the U.S. for performances of the Infringing Composition, including advertising throughout New York. His advertising for his tours highlight and promote the Infringing Works.  Lil Jon has performed the Infringing Composition in New York numerous times and received revenue from these performances, including on March 8, 2014, September 28, 2014, November 13, 2014, November 14, 2014, December 11, 2014, December 12, 2014, February 6, 2015, December 11, 2015, February 26, 2016 and January 14, 2017. Upon information and belief, Lil Jon has performed the Infringing Composition at each one of these performances. Each performance constituted an infringing act occurring in New York. Lil Jon has received revenue from advertising, authorizing, performing, selling, and arranging numerous exploitations of the Infringing Works in New York. Upon information and belief, Lil Jon, individually and/or by authorizing his agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

6.      Upon information and belief, Defendant Lil' Jon Touring, Inc. ("Lil' Jon Touring") is a Georgia Corporation with a principal place of business at 13701 Riverside Drive, 8th Floor, Sherman Oaks, CA 91423. Upon information and belief, Lil' Jon Touring regularly

conducts business in this Judicial District with respect to the Infringing Works. Upon information and belief, Lil' Jon Touring may be served through its registered agent, Corporation Service Company located at 40 Technology Parkway Southsuite 300, Ben Hill, Norcross, GA 30092.  As described above, Lil Jon has performed in New York numerous times and received revenue from these performances in which the Infringing Composition was performed. Lil' Jon Touring, in its capacity as Lil Jon's touring entity, has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Composition in New York. Upon information and belief, Lil' Jon Touring, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York. On information and belief, Lil Jon is the CEO, CFO, and Secretary of Lil' Jon Touring. On information and belief, Lil' Jon Touring operates as the alter-ego of Lil Jon.

7.   Upon information and belief, Defendant Lil' Jon Productions, Inc. ("Lil' Jon Productions") is a Georgia Corporation with a principal place of business at 13701 Riverside Drive, 8th Floor, Sherman Oaks, CA 91423. Upon information and belief, Lil' Jon Productions regularly conducts business in this Judicial District with respect to the Infringing Works. Upon information and belief, Lil' Jon Productions may be served through its registered agent, Corporation Service Company located at 40 Technology Parkway Southsuite 300, Ben Hill, Norcross, GA 30092.  As described above, Lil Jon has performed in New York numerous times and received revenue from these performances in which the Infringing Composition was performed. Lil' Jon Productions, in its capacity as Lil Jon's production entity, has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Composition in New York. Upon information and belief, Lil' Jon Productions, individually

and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York. On information and belief, Lil Jon is the CEO, CFO, and Secretary of Lil' Jon Productions. On information and belief, Lil' Jon Productions operates as the alter-ego of Lil Jon.

8.    Upon information and belief, Defendant Lil Jon Merchandising Inc ("Lil' Jon Merchandising") is a Georgia Corporation with a principal place of business at 13701 Riverside Drive, 8th Floor, Sherman Oaks, CA 91423. Upon information and belief, Lil' Jon Merchandising regularly conducts business in this Judicial District with respect to the Infringing Works. Upon information and belief, Lil' Jon Merchandising may be served through its registered agent, Corporation Service Company located at 40 Technology Parkway Southsuite 300, Ben Hill, Norcross, GA 30092.  As described above, Lil Jon has performed in New York numerous times and received revenue from these performances in which the Infringing Composition was performed. Lil' Jon Merchandising, in its capacity as Lil Jon's merchandising company, has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Composition in New York. Upon information and belief, Lil' Jon Merchandising, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York. Upon information and belief, Lil' Jon Merchandising has advertised merchandise including the title of the Infringing Work specifically to New York residents, and sold such merchandise at shows in New York. On information and belief, Lil Jon is the CEO, CFO, and Secretary of Lil' Jon Merchandising. On information and belief, Lil' Jon Merchandising operates as the alter-ego of Lil Jon.

9.   Upon information and belief, Defendant Lil' Jon 00017, Inc. ("Lil' Jon 00017") is a Georgia Corporation with a principal place of business at 13701 Riverside Drive, 8th Floor, Sherman Oaks, CA 91423. Upon information and belief, Lil' Jon 00017 regularly conducts business in this Judicial District with respect to the Infringing Works. Upon information and belief, Lil' Jon 00017 may be served through its registered agent, Corporation Service Company located at 40 Technology Parkway Southsuite 300, Ben Hill, Norcross, GA 30092.  As described above, Lil Jon has performed in New York numerous times and received revenue from these performances in which the Infringing Composition was performed. Lil' Jon 00017, in its capacity for Lil Jon, has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Composition in New York. Upon information and belief, Lil' Jon 00017, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York. On information and belief, Lil Jon is the CEO, CFO, and Secretary of Lil' Jon 00017. On information and belief, Lil' Jon 00017 operates as the alter-ego of Lil Jon.

10.     Upon information and belief, Defendant William Grigahcine p/k/a DJ Snake ("DJ Snake") is a resident and citizen of France who conducts regular business in the United States and regularly conducts business in this Judicial District with respect to the Infringing Works.  DJ Snake, an individual, is a writer, composer and performer of the Infringing Works.  Upon information and belief, DJ Snake, individually and through his agents, conducted a nationwide advertising campaign for touring in the U.S. for performance of the Infringing Works, including advertising throughout New York. DJ Snake has performed in New York numerous times and received revenue from these performances in which the Infringing Composition was performed

and the Infringing Works were played.  He performed the Infringing Composition in New York on November 22, 2013, December 30, 2013, April 11, 2014, August 3, 2014, August 9, 2014, October 31, 2014, May 14, 2016, August 7, 2015 and December 28, 2016.   DJ Snake has received revenue from advertising, authorizing, performing and arranging numerous exploitations of the Infringing Works in New York. Upon information and belief, DJ Snake, individually and/or by authorizing his agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

11. Defendant DJ Snake Music, LLC ("DJ Snake Music") is a Delaware Limited Liability Corporation doing business in New York. Upon information and belief, DJ Snake Music is a publisher of the infringing Composition and regular conducts business in this Judicial District. Upon information and belief, DJ Snake Music may be served through its registered agent, Eresidentagent, Inc., 1013 Centre Road, Suite 403S, Wilmington, DE 19805.   Upon further information and belief, DJ Snake Music is affiliated with its publishing administrator, Monarch Musick, LLC, a New York limited liability corporation with its principal place of business in New York.  DJ Snake Music has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Works in New York.

12.      Defendant DJ Snake Touring, LLC ("DJ Snake Touring") is a Delaware Limited Liability Corporation doing business in New York. Upon information and belief, DJ Snake Touring is the touring entity for DJ Snake.  Upon information and belief, DJ Snake Touring may be served through its registered agent, Eresidentagent, Inc., 1013 Centre Road, Suite 403S, Wilmington, DE 19805.  As described above, DJ Snake has performed in New York numerous times and received revenue from these performances in which the Infringing Composition was

performed, and the Infringing Works played.  DJ Snake Touring, in its capacity as DJ Snake's touring entity, has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Works in New York. Upon information and belief, DJ Snake Touring, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

13.     Upon information and belief, Defendant Martin Joseph Leonard Bresso p/k/a Tchami ("Tchami") is a resident and citizen of France and regularly conducts business in this Judicial District with respect to the Infringing Works. Tchami, an individual, is a writer and performer of the Infringing Works.  Tchami has performed in New York numerous times.  He performed the Infringing Composition in New York on September 18, 2015, June 10, 2016 and December 28, 2016 on the same tour with DJ Snake.  Tchami has received revenue from advertising, authorizing, performing and arranging numerous exploitations of the Infringing Works in New York. Upon information and belief, Tchami, individually and/or by authorizing his agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

14.     Upon information and belief, Defendant Steve Guess ("Guess") is a resident and citizen of France and regularly conducts business in this Judicial District with respect to the Infringing Works.  Guess, an individual, is a writer and composer of the Infringing Works. Upon information and belief, Guess, individually and/or by authorizing his agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

15.     Defendant Cookies and Milk, LLC d/b/a King of Crunk Music ("King of Crunk")
is a Georgia Limited Liability Corporation. Upon information and belief, King of Crunk is a
publisher of the Infringing Composition and regularly conducts business in this Judicial District.
Upon further information and belief, King of Crunk may be served via its registered agent
Vincent P. Phillips, 2200 Fairborn Road, Fulton, Atlanta, Georgia 30331. King of Crunk is also
an affiliated publisher with BMI, which controls 50% of the public performance rights of the
Infringing Composition.   King of Crunk collects public performance royalties from the
Infringing Composition through BMI pursuant to an agreement with BMI. BMI is a New York
corporation with its headquarters in New York.  By exploiting the Infringing Composition
through BMI in New York, King of Crunk has committed a tort in New York.  King of Crunk
has received revenue from advertising, authorizing and arranging numerous exploitations of the
Infringing Works in New York.  Upon information and belief, King of Crunk, individually
and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and
benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in
New York.

16.     Defendant Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music
Publishing ("Kobalt Music") is a New York Corporation with its principal place of business at
220 West 42nd Street, 11th Floor, New York, NY 10036. Upon information and belief, Kobalt
Music is a publisher of the Infringing Composition.  Upon further information and belief, Kobalt
Music may be served via its registered agent Corporation Service Company, 80 State Street,
Albany New York, 12207-2543.  Kobalt Music collects public performance royalties from the
Infringing Work through BMI pursuant to an agreement with BMI. BMI is a New York
corporation with its headquarters in New York. By exploiting the Infringing Composition

through BMI in New York, Kobalt Music has committed a tort in New York.  Kobalt Music has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Work in New York.  Upon information and belief, Kobalt Music, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Work in New York.

17.     Defendant BMG Rights Management (US) LLC d/b/a BMG Gold Songs ("BMG") is a Delaware Corporation with its principal place of business at 1745 Broadway, 19th Floor, New York, NY 10019. Upon information and belief, BMG is a publisher of the infringing Composition.  Upon further information and belief, BMG may be served via its registered agent Mark Robinson, 1745 Broadway, 19th Floor, New York, New York 10019. BMG is a registered publisher with ASCAP, which controls 50% of the public performance rights of the Infringing Composition.  BMG collects public performance royalties from the Infringing Composition through ASCAP pursuant to an agreement with ASCAP. ASCAP is a New York corporation with its headquarters in New York.  By exploiting the Infringing Work through ASCAP in New York, BMG has committed a tort in New York.  BMG has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Works in New York. Upon information and belief, BMG, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

18.     Defendant Get Familiar, Inc. d/b/a Get Familiar Music ("Get Familiar") is a Delaware Corporation with its principal place of business at 400 S. Beverly Dr. Penthouse, Beverly Hills, CA 90212. Upon information and belief, Get Familiar is a publisher of the

Infringing Composition.  Upon further information and belief, Get Familiar may be served via at its registered agent at The Company Corporation, 2711 Centerville Rd. STE 400, Wilmington, Delaware 19808. Get Familiar is a registered publisher with ASCAP, which controls 50% of the public performance rights of the Infringing Composition.  Get Familiar collects public performance royalties from the Infringing Composition through ASCAP pursuant to an agreement with ASCAP. ASCAP is a New York corporation with its headquarters in New York. By exploiting the Infringing Composition through ASCAP in New York, Get Familiar has committed a tort in New York.  Additionally, on the ASCAP website, Get Familiar is listed care of BMG Rights Management US LLC with an address of 1745 Broadway, 19th Floor, New York, NY 10019.  Get Familiar has received revenue from advertising, authorizing and arranging numerous exploitations of the Infringing Works in New York. Upon information and belief, Get Familiar, individually and/or by authorizing its agents, has sold, licensed, authorized for sale, and distributed, and benefited from the sale, distribution, licensing, and other exploitations of the Infringing Works in New York.

## JURISDICTION AND VENUE

19.     The jurisdiction of this Court with respect to the copyright infringement claims is based upon 28 U.S.C. §§ 1331 and 1338(a) in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. 101 *et seq.*), which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

20.     This Court has general personal jurisdiction over certain Writer Defendants, who reside and are essentially at home in the Judicial District, and Corporate Defendants, who are incorporated or have their principal place of business in New York.

21.     This Court has specific personal jurisdiction over Defendants given systematic

and continuous business contacts of both corporate and individual Defendants with respect to the Infringing Works, evidenced by the connections discussed above, which, collectively, demonstrate purposeful availment, and show that this Court has jurisdiction over all Defendants.

22.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a), in that the claims arise in this Judicial District, where Defendants regularly conduct business and may be found.

## FACTUAL ALLEGATIONS

### A.     Background of Plaintiff's Original Work titled "Turn Down for What"

23.     Plaintiff Golden Crown is the legal and beneficial owner of the copyright in the Original Work, which has been registered with the United States Copyright Office as identified by Copyright Registration Number PA0002029824.

24.     Fredley Saurel, Maliki Sankoh and Roberson Bonjean are the authors of the Original Work. Mr. Sankoh p/k/a Martianonthebeat and Mr. Bonjean p/k/a Robbdagreat, collectively, are professionally known as "Tha Architectz" (hereinafter collectively "Tha Architectz"). Mr. Saurel, individually, is a recording artist professionally known as Freddie GZ (hereinafter "Freddie GZ") and is signed to the record label A2M.

25.     A2M was formed in or about 2006 and Freddie GZ was the first artist signed to the record label. Freddie GZ is an established artist in the Rap and Hip-Hop circuits in the South and South East region of the United States due to his single and album releases as well as his performances across the United States including performances in New Jersey, New York, Florida, Texas, Kentucky, North Carolina, South Carolina and Georgia.

26.     The idea for the Original Work came about in mid-to-late 2012. Freddie GZ and the team at A2M routinely threw around a saying, namely "turn down for what." "Turn down

for what" was their version of the colloquial term "turn up" (used to describe "get wild" or "let's party," among other things). Freddie GZ wanted to brand it, and believed the best way to brand this theme was to record it in a song.

27.     Freddie GZ composed the Original Song with Tha Architectz in late 2012; the final version was finished in the studio in January of 2013. A2M liked the Original Song and it was released as a single on March 9, 2013. However, Freddie GZ tweeted about the song as early as March 4, 2013 "DJs New music on the way 'Turn Down For What' produced by 'The Architects' instagr.am/p/WdMm8TEkGB/."

**B.     Dissemination of Plaintiff's Original Work and Defendants' Access to the Same.**

28.     Freddie GZ has had exposure nationally and internationally in large part due to the Internet, satellite radio, and other forms of media, including his music being offered through digital providers such as Spotify. In 2011, Freddie GZ released a single on A2M entitled "Quagmire." The song "Quagmire" was Freddie GZ's biggest release before the Infringed Work and received national radio airplay, among other sources of exploitation. "Quagmire" was well received and even had social media recognition from artists such as Miguel, a recording artist and with over 953,000 followers on Twitter (@Miguel) and over 1.6 million followers on Instagram (@Miguel).

29.     The Breakfast Club is a popular radio show on Power 105.1, a nationally syndicated radio station that plays Rap, Hip-Hop, and R&B music, and @breakfastclubam has over 449,000 followers on Twitter. Charlamagne Tha God ("Charlamagne") is a well-recognized and respected figure among the Rap and Hip-Hop communities, and one of the hosts on the radio show The Breakfast Club. Charlamagne has 1.81 million followers on Twitter

(@cthagod) and more than 1.7 million follows on Instagram (@cthagod). Charlamagne has talked about Freddie GZ on air during The Breakfast Club more than once prior to March 2013, when the Original Work was made available to the public.

30.     On The Breakfast Club, the radio host Charlamagne talked about Freddie GZ with veteran and renowned recording artist Killer Mike around the spring of 2013. Killer Mike, who, upon information and belief, lives in Atlanta, Georgia ("Atlanta") or the surrounding area, has recorded and released music with Lil Jon previously and currently has over 273,000 followers on Twitter (@KillerMike) and over 334,000 followers on Instagram (@killermike). Charlamagne (@cthagod) tweeted about Freddie GZ and "Quagmire" on October 12, 2012; twice on October 14, 2010; October 15, 2010; and again on October 18, 2010.

31.     Plaintiff's Original Work was released to national radio stations as well as to other media outlets such as iTunes, Spotify, Amazon, and YouTube, among others.

32.     Plaintiff's Original Work currently has more than 349,000 streams on Spotify alone, and more than 520,000 streams through all sources, including, but not limited to, Amazon, Pandora, Spotify, and Apple Music. The Original Work has sold more than 12,500 copies on iTunes and Amazon Music, among others. The uploaded video of the Original Work on YouTube currently has over 5,000 views.

33.     On March 24, 2013, shortly after the release of Plaintiff's Original Work, Charlamagne (@cthagod) tweeted "Turn Down For What?? Turn Up. LOUDER!!!!!!!!"

34.     On May 25, 2013, Charlamagne (@cthagod) re-tweeted a tweet, "RT @loverboy843: Ya Boy DJ Flame @ddikadolb @cthagod & Freddie GZ. Outside of Kono's Lounge. Y'all was cool as hell Instagram.com/p/Zua0bZBNaP/"

35.     On May 31, 2013, Charlamagne (@cthagod) tweeted "Everybody be screaming 'Turn Down For What?!!' until the police come……"

36.     To further show the popularity of the Original Work, on July 8, 2013, Killer Mike (@KillerMike) tweeted "RT @ATLien: Turn down for what???? <> becuz its 6am. That's for what Miss. LoL. Salutes hun."

37.     Tellingly, Lil Jon and DJ Snake exchanged tweets on July 15, 2013, only four months after the release of Plaintiff's Original Work. DJ Snake tweeted to Lil Jon "Turn Down For What ??? @LilJon"; Lil Jon replied "LET'S GO! Rt'@djsnake: Turn Down For What ??? @LilJon." After the release of Freddie GZ's song of the same title in early March 2013, and its acclaim and nationwide recognition and distribution, DJ Snake and Lil Jon composed and recorded the Infringing Works. The striking similarity between the Original Work and the Infringing Works, as detailed below, when paired together with the timeline of events cannot be a coincidence. There is no possibility that the Infringing Works are creatures of independent creation.

38.     Each of the above-referenced comments and/or Tweets post-dates the release of the Infringed Work, but pre-dates the release of Defendants' Infringing Works. Upon information and belief, Defendants had access to the Original Work given the wide dissemination of the work and the other facts asserted herein.

39.     While online coverage of the Original Work has given Freddie GZ nationwide exposure, Freddie GZ and his music are particularly well-recognized in Atlanta and the surrounding areas due to the fact that he has performed in Atlanta on numerous occasions over the years, including frequent performances pre-dating the composing, recording and release of the Infringing Works.

40.     Freddie GZ has worked with several artists in the Atlanta rap scene and has performed with artists with ties to Defendant Lil Jon such as 2Chainz, Waka Flocka Flame, OJ Da Juiceman, and Princess from Crime Mob, among others. Among his most notable shows in Atlanta were opening for *BET Hip-Hop* Award winning Waka Flocka Flame and Grammy Award winning 2Chainz in 2010.

41.     Upon information and belief, Defendant Lil Jon resides and/or spends a significant amount of time in Atlanta or in the surrounding area, and Defendant King of Crunk is a Georgia corporation with a registered agent in Atlanta. Upon information and belief, Defendants gained access to Plaintiff's Original Work through their connections in the Atlanta Rap and Hip-Hop scene.

42.     Upon information and belief, and as evidenced by the striking similarities between the works at issue, Defendants were exposed to Freddie GZ's music online, over the radio, through word of mouth, in person, or otherwise.

### C.     Background of Defendants' Infringing Works

43.     Lil Jon and DJ Snake are recording artists that released the Infringing Works as a single on Columbia Records on December 18, 2013. The credited songwriters for the Infringing Composition are DJ Snake, Lil Jon, Martin Joseph Leonard Bresso, and Steve Guess.

44.     Defendants are the performers, writers, producers, record label(s), manufacturers, distributors, and publishers of the Infringing Works, which include any remixes thereof, and other products embodying the "Infringing Works."

45.     As explained further below, the similarities in the Original Work and the Infringing Works would be easily identifiable to the ordinary observer and are strikingly similar, or, at the very least, substantially similar.

46. As explained further below, the striking similarities to the Original Work are not the product of independent creation. To assert the shared similarities between the Original Work and the Infringing Works are the product of independent creation of the Defendants is not only illogical, but also impossible. It is apparent that Defendants intentionally and willfully copied the numerous elements original to Plaintiff's Original Work in their Infringing Works.

47. Indeed, Whosampled.com ("WhoSampled") lists the Infringing Work as having sampled Plaintiff's Original Work. WhoSampled is a website created out of a passion for sampling, music history, and music production, which claims to be the world's most comprehensive, detailed, and accurate database of samples, cover songs, and remixes, covering the entire history of music.

**D.    Striking Similarity Between Plaintiff's Original Work and Defendants' Infringing Works of the Same Title.**

48. The Original Work's introduction contains a steadily rising synth sound and the Infringing Works also start with a slowly rising synth line for the first seven measures. This similarity would be obvious to an ordinary listener and is just one example of the substantial similarities between the works at issue.

49. The Original Work and the Infringing Works contain the same title "Turn Down For What" and both have the same lyrical hook "Turn Down For What."

50. The phrase "Turn Down For What" is both quantitatively and qualitatively important to the Original Work, and the Infringing Work, and is instantly recognizable to the ordinary observer. The phrase "Turn Down For What" as used in the Original Work is unique and original to the Original Work and its use in the Infringing Works could not have been the product of independent creation.

51.     The Infringing Works start the phrase "Turn Down For What" on the same beat and using the same rhythm as in the Original Work, which is neither a coincidence nor the product of independent creation. This is shown below:



52.     In both songs, the lyrics "Turn Down For What" start on the "and" (or "+") of the third beat using two eighth notes followed by two sixteenth notes and the voice drops in pitch on the word "what" in both.

53.     The last three lyrics phrases "Turn Down For What" in both songs line up exactly, which is illustrated in the chart below by the underlined lyrics:

## Turn Down for What Comparison



54.    The Infringing Works' first instrumental hook, which starts around 0:21 and ends around 1:21, is substantially similar to the repeating one measure synth part of the Original Work. Plaintiff's Original Work is in the key of C# minor and the infringing work is in the key of E minor.  As is customary practice in a musicological analysis, one piece is transposed into the key of the other piece, for ease of comparison.  Therefore, the notes found in Plaintiff's

Original Work in C# minor are c#-a-g#-d#-e. When transposed to the same key as the Infringing Works, E minor, the notes in E minor are the exact same: e-c-b-f#-g. In the chart below, the red letters represent the same notes and the blue letters represent notes that are not identical but illustrate the important rhythmic notes used in both instrumental hooks. The rows with an "A" represent the Original Work, the rows with "B" represent the Infringing Works:

| Beats | 1 | | + | | 2 | | + | | 3 | | + | | 4 | | + | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LyricA | | | | | | | | | | | Turn | | down | | for | what |
| LyricB | | | | | | | | | | | Turn | | down | | for | what |
| InstA | e | | | c | | b | | | | | f# | | | | g | |
| InstB | e | | e | c | | b | | | | | b | c | | | e | |

Note, instrumental hook in Song A (InstA) is transposed from the original key of C# minor to E minor.

55.     Once again, the first instrumental hook in the Infringing Works is compared to the instrumental hook in the Original Work below, except this time with music notation. The underlined notes in the first four beats show the important weighted notes ("IWN") in the Infringing Works when compared to the Original Work. The vertical red lines show the use of the same first three important weighted notes ("IWN") starting on the same beats in both (beat 1, the last 1/16 note of beat 1, and the "+" of beat 2):



56.     The instrumental hooks, as shown and explained above, are at minimum substantially similar and would be obviously similar to an ordinary listener.

21

57.     The Original Work and the Infringing Works both contain the use of a short vocal repeated word on the "+" of the beats.  The Infringing Works use the repeated word "hey" on the "+" of each beat in the instrumental section after the chorus at around 0:41. The Original Work uses the repeated word "go" on the "+" of beats one and three starting at around 1:21 in the chorus. This would be obvious to the ordinary listener and is another substantial, if not striking, similarity.

58.     The structures of both songs are substantially similar. The choruses, which follow the introduction in both songs, are repeated three times in each song after two eight-measure sections, and both songs conclude with an instrumental section. This is very significant, would be obvious to an ordinary observer, and is a striking similarity. This is also not a common structure and the uses of eight measure sections are not common in rap songs.

59.     Independent creation would be impossible in this context. Given the overwhelming similarities between the works at issue, including, but not limited to, the title, main lyric hook, main instrumental hook, structure, rhythm and tempo range, it is clear that Defendants' Infringing Works copy Plaintiff's Original Work.

60.     The similarities between Plaintiff's Original Work and Defendants' Infringing Works reach the very essence of the works at issue. The similarities go beyond substantial, and are in fact striking, which is itself sufficient to establish copyright infringement.

**E.      Defendants Enjoyed Widespread Commercial Success, Resulting in Significant Profits, as a Result of the Unauthorized Release and Exploitation of the Infringing Works**

61.     As mentioned above, Defendants released the Infringing Works as a single on or about December 18, 2013.  The Infringing Works were composed and recorded well after the

release of the Infringed Work, and after the Defendant Writers had access to the Infringed Work as discussed above.

62.     In February of 2014, less than three months after its release, the Infringing Works were certified Gold, denoting a single or album that has sold more than 500,000 units.

63.     On February 4, 2014, DJ Snake (@djsnake) tweeted Lil Jon (@LilJon) "'Turn Down For What' REACHES GOLD STATUS IN LESS THAN A MONTH WITH SALES OVER 500,000 copies WOOWWW @LilJon"; Lil Jon (@LilJon) responded with "@djsnake TOLD U FRM THE BEGINNING!!"

64.     In March of 2014, less than four months after its release, the Infringing Works were certified platinum, denoting a single or album that has sold more than 1,000,000 units.

65.     Defendants' Infringing Works reached number one on *Billboard*'s Hot Dance/Electronic Songs on April 12, 2014.

66.     On April 26, 2014, a remix of the Infringing Works, featuring Juicy J, 2 Chainz, and French Montana was released.

67.     On April 28, 2014, a second remix of the Infringing Works entitled "Turn Down For What (Dancehall Remix)" was released featuring Chi Ching Ching, Assassin, and Konshens.

68.     On May 7, 2014, a third remix of the Infringing Works titled "Turn Down for What (Lil Jon Remix)" was released featuring Pitbull and Ludacris.

69.     Defendants' Infringing Works appeared on the *Now That's What I Call Music! 50* album released by UMG Recordings, Inc. and Sony on May 6, 2014.

70.     The Infringing Works also appeared on the *Now Party Anthems, Vol. 2* album released by UMG Recordings, Inc. and Sony on August 5, 2014.

71.     The Infringing Works also appeared on the *Now That's What I Call a Workout 5* album released by UMG Recordings, Inc. and Sony on December 15, 2014.

72.     The Infringing Works reached number one on *Billboard*'s Rhythmic Songs chart and number two on *Billboard*'s Dance/Mix Show Airplay on May 31, 2014.

73.     The Infringing Works peaked at number four on *Billboard*'s The Hot 100 and at number five on *Billboard*'s Mainstream Top 40 on June 14, 2014.

74.     The Infringing Works were licensed for use and featured on the *Furious 7: Original Motion Picture Soundtrack* by Universal Studios and Atlantic Recording Corporation for the United States, and WEA International Inc. for worldwide distribution on March 17, 2015.

75.     The Infringing Works were licensed for use and featured on the Soundtrack for the movie *Alvin and The Chipmunks: The Road Chip* that was released on December 11, 2015 by Republic Records, a Division of Universal Music Group, and were licensed for use in the movie *Alvin and The Chipmunks: The Road Chip*, which was released on December 12, 2015.

76.     Among the many examples of the widespread distribution of the Infringing Works, ESPN featured the Infringing Song on a TV Advertisement featuring Lil Jon in promoting ESPN's NBA Saturday Primetime.

77.     *Rolling Stone* magazine voted the Infringing Works as the second-best song of the year in 2014.

78.     To-date, a single music video encompassing the Infringing Works titled "DJ Snake, Lil Jon – Turn Down for What" has received over 670 million (670,000,000) views on YouTube, and has generated significant revenues for the Defendants. The Infringing Works are directly responsible for these views and the revenue received by Defendants as a result.

79.     To-date, the Infringing Works have been certified by the RIAA as 5x platinum.

**F.      Defendants Built a Brand on the Commercial Success of the Infringing Works**

80.      Not only have the Infringing Works been a huge musical success for Lil Jon and DJ Snake, and all Defendants, but also the misappropriation has proximately resulted in a windfall for Lil Jon and the other Defendants in merchandising and touring revenues. The infringement, alleged herein, is a but-for proximate cause of all of the profit enjoyed by Defendants in this regard, as described above and below.

81.      The title of Lil Jon's official website, liljon.com, reads "Liljon.com – Official Website of Lil Jon, Turn Down For What." "Turn Down For What" merchandise is even advertised on the front page of his website.

82.      Lil Jon has gone as far as filing a trademark for the word mark phrase "Turn Down For What." On or about March 29, 2016, Jonathan Smith p/k/a Lil Jon filed a trademark of the phrase "Turn Down For What" with the United States Patent and Trademark Office.  The trademark filing states his intent to use the phrase and word mark for goods and services including beer mugs, beverage glassware, mugs, cups, shot classes, T-shirts, hats and caps, sweat shirts and hoodies.

83.      Lil Jon runs an official website selling merchandise with the phrase "Turn Down For What" at [www.shopbenchmark.co/liljon](www.shopbenchmark.co/liljon).  The website features clothing, drinking glasses, wrist bands featuring the phrase "Turn Down For What."  The same products can be found on his official website liljon.com/shop.

84.      Upon information and belief, the Infringing Work has been licensed to numerous entities for use at sporting events and stadiums across the world providing Defendants with

substantial revenue and profits. These opportunities would not have been available to Defendants if they had not infringed upon Plaintiff's Original Work.

85.    One example, due to the popularity of the Infringing Works, the University of Tennessee's Athletic Department ("UT") adopted a derivative of the Infringing Works as its official third down anthem for the football team (replacing "Turn Down For What" with the phrase "Third Down For What"). On numerous occasions, UT played the Infringing Works in front of over 100,000 fans in Neyland Stadium each time the opposing team faced a third down. Upon information and belief, UT also licensed the play on lyrics for printing on official University merchandise, among other uses.

86.    Upon information and belief, the overwhelming success of the Infringing Works has provided Defendants with substantial opportunities to tour and perform around the world. The revenue and profits derived from these performances and appearances are attributable to the success of the Infringing Works.  These opportunities would not have been available to Defendants if they had not infringed upon Plaintiff's Original Work, and are a "but-for" cause of such profit.

87.    Upon information and belief, subsequent to the release of the Infringing Works, the Defendants have received significantly more in touring revenues than they had realized individually and/or collectively before the release of the Infringing Works. Upon information and belief, the primary cause of the increase in touring opportunities and revenues was the success brought about by Defendants' blatant copyright infringement of Plaintiff's Original Work.

88.    Indeed, the Infringing Works were specifically used to promote and advertise performances, concerts, and touring, and the Infringing Composition was performed at all such

performances, concerts, and tours.  In short, the Infringing Works were the driving force in the

revenues generated by Lil Jon, Lil' Jon Touring, Lil' Jon Productions, Lil Jon Merchandising,

Lil' Jon 00017, DJ Snake, DJ Snake Music, DJ Snake Touring, and other of the Defendants since

the release of the Infringing Works.  On information and belief, in total, the profit enjoyed by

Defendants well exceeds $15 million ($15,000,000.00), and is directly attributable to the willful

copyright infringement alleged herein.

## CAUSES OF ACTION
## DIRECT, CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
## (AGAINST ALL DEFENDANTS

89.     Plaintiff re-alleges each and every fact set forth in the preceding Paragraphs of the

Complaint as if they were fully set forth herein.

90.     The Original Work is properly registered with the United States Copyright Office.

Plaintiff is the legal and beneficial owner of the United States copyright in all rights, title, and

interests in the Original Work.

91.     Defendants had access to the Original Work (as discussed above). Furthermore,

Plaintiff's Original Work and Defendants' Infringing Works are strikingly similar, such that

access is presumed.

92.     Collectively, Defendants released, manufactured, distributed, licensed, and

marketed the Infringing Works.

93.     Defendants' unauthorized reproduction, distribution, public performance, display

and creation of a derivative work, the Infringing Works, infringes Plaintiff's exclusive rights in

violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

94.     Defendants did not seek or receive permission to copy or interpolate any portion

of the Original Work into the Infringing Works. Despite the lack of permission, and in blatant

disregard for Plaintiff's rights, Defendants unlawfully copied quantitatively and quantitatively important portions of the Original Work into the Infringing Works.

95.     Defendants' conduct has at all times been knowing, willful, and with complete disregard to Plaintiff's rights.

96.     As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed.

97.     The Infringing Works copy quantitatively and qualitatively distinct, important, unique, and recognizable portions of the Original Work.  The copied materials are also qualitatively and quantitatively important to the Infringing Works, and recognizable to the ordinary observer.

98.     From the date of the creation of the Infringing Works, all of Defendants have infringed Plaintiff's copyright interest in the Original Work including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing the Infringing Works at radio, live concerts, personal appearances, and on video, television, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the records and digital downloads through the execution of licenses, and/or actually selling, manufacturing, and/or distributing the Infringing Works through various sources; (c) by substantially copying and the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of the Original Work in and as part of the Infringing Works packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

99.     Plaintiff has received no copyright ownership in and for any of the exploitations of the Infringing Works or any of the works associated with the Infringing Works.

100.    The infringement by Defendants has been, and continues to be, willful and knowing.

101.    Defendants have reproduced and/or distributed and continue to manufacture, reproduce and distribute large numbers of copies of the Infringing Works, which violate Plaintiff's copyrights and are at issue in this lawsuit. Defendants have granted, or caused to be granted to various parties, licenses to reproduce, sample and/or distribute the Infringing Works in violation of Plaintiff's copyrights.

102.    With knowledge of the infringement, Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

103.    Defendants have the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

104.    The infringement is continuing as the Infringing Works continue to be sold and licensed for sale, downloads, ringtones, mastertones, and other exploitations by Defendants, or their agents.

105.    As a direct and proximate result of the conduct of the Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

106.    Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to damages, including the substantial profits of Defendants, direct and indirect, as will be proven at trial, which, upon information and belief, are believed to well exceed $15 million ($15,000,000.00).

107.    Plaintiff is entitled to Defendants' profits relating to foreign sales of copies of the Infringing Works that were manufactured, distributed, or otherwise infringed domestically, to the extent a predicate act of infringement occurred in the United States.

108.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction, following judgment, prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Works, or, in the alternative, a continuing royalty for each sale or license of the Infringing Works, or any money received by Defendants related thereto, following judgment, and related to any amount not taken into account in the Judgment, in an amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and for the following relief:

A.    A declaration that Defendants have willfully infringed Plaintiff's copyrighted works in violation of the Copyright Act;

B.    A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

C.    An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the direct and indirect profits of Defendants as will be proven at trial;

D.      A permanent injunction requiring Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act;

E.      If the Court determines a permanent injunction is not the appropriate remedy for the continued infringement of Plaintiff's rights under the Copyright Act, then pursuant to precedent, Plaintiff be compensated by a running royalty paid on all exploitations the Infringing Works commencing from the date of judgment and for all amounts not taken into consideration in the judgment;

F.      An award of attorneys' fees and costs;

G.      Pre-judgment and post-judgment interest according to law, as applicable; and

H.      For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiff respectfully demands a trial by jury.

Dated: May 4, 2017.

By: /s/ Richard S. Busch
Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone:    (615) 726-5422
Facsimile:    (615) 726-5417
rbusch@kingballow.com

/s/ Elliot Schnapp
Elliot Schnapp (ES 9170)
GORDON, GORDON & SCHNAPP, P.C.
30 Broad Street 21st Floor
New York, New York 10022

31

Telephone:      (212) 355-3200
Facsimile:      (212) 355-3292

*Attorneys for Plaintiff*